**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------

FAIR HOUSING JUSTICE CENTER, INC.,

                  Plaintiff,

     v.

ALLURE REHABILITATION SERVICES LLC,

HAMILTON PARK MULTICARE LLC,

CASSENA CARE LLC,

AMSTERDAM NURSING HOME
CORPORATION,

SEA CREST HEALTH CARE CENTER, LLC,

CENTERS FOR SPECIALTY CARE GROUP
LLC,

SENIOR MED, LLC,

CROWN NURSING HOME ASSOCIATES INC.,

SENTOSACARE, LLC,

WHITE PLAINS CENTER FOR NURSING
CARE LLC,

EASTCHESTER REHABILITATION AND
HEALTH CARE CENTER, LLC,

GOLDEN GATE REHABILITATION AND
HEALTH CARE CENTER, LLC,

CLIFFSIDE NURSING HOME, INC.,

FOREST VIEW NURSING HOME, INC.,

ULTIMATE CARE ASSISTED LIVING

**15-CV-6336 (RJD)(LB)**

**PLAINTIFF'S MEMORANDUM
OF LAW IN OPPOSITION TO
MOTIONS TO DISMISS**

MANAGEMENT LLC,

ENGEL BURMAN SENIOR HOUSING AT
WHITE PLAINS LLC d/b/a THE BRISTAL AT
WHITE PLAINS,

ENGEL BURMAN SENIOR HOUSING AT
NORTH WOODMERE LLC d/b/a THE BRISTAL
AT NORTH WOODMERE,

ENGEL BURMAN AT SAYVILLE LLC d/b/a
THE BRISTAL AT SAYVILLE,

ENGEL BURMAN AT ARMONK, LLC d/b/a
THE BRISTAL AT ARMONK,

                    Defendants.

-----------------------------------------------------------------

TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................. iv

PRELIMINARY STATEMENT ...................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

ARGUMENT .................................................................................................................................. 4

    A.   Plaintiff Has Organizational Standing Under Article III of the U.S. Constitution ............. 4

    B.   Plaintiff Has Standing to Seek Injunctive Relief ................................................................ 10

    C.   Plaintiff Has Stated Claims Under the RA, FHA, and NYCHRL ....................................... 12

        1.   The Rehabilitation Act ................................................................................................ 12

        2.   The Fair Housing Act .................................................................................................. 17

        3.   The New York City Human Rights Law ..................................................................... 20

    D.   Plaintiff Has Sued the Proper Parties ................................................................................. 22

CONCLUSION .............................................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

*Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160 (S.D.N.Y. 2006) ... 6

*Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399 (3d Cir. 2005) ..................... 11

*Alexander v. Choate*, 469 U.S. 287, 300 (1985) .......................................................................... 14

*American Council of the Blind v. Paulson*, 525 F.3d 1256 (D.C. Cir. 2008) .............................. 14

*Bartlett v. New York State Bd. of Law Examiners*, 970 F. Supp. 1094 (S.D.N.Y. 1997) ............. 16

*Bartman v. Shenker*, 5 Misc. 3d 856 (N.Y. Sup. Ct. 2004) ......................................................... 20

*Blunt v. Lower Merion School Dist.*, 767 F.3d 247 (3d Cir. 2014)................................................. 7

*Brooklyn Center for the Disabled v. Bloomberg*, 980 F. Supp. 2d 588 (S.D.N.Y. 2013) ............ 14

*Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994) ..................................................................... 11

*Cales v. New Castle Hill Realty*, No. 10-cv-3426 (DAB), 2011 U.S. Dist. LEXIS 9619 (S.D.N.Y.
    Jan. 31, 2011) ........................................................................................................................ 16

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978) ....................................................... 8

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........................................................................ 9

*Constance v. SUNY Health Science Ctr. at Syracuse*, 166 F. Supp. 2d 663 (N.D.N.Y. 2001) .... 15

*County of Riverside v. McLaughlin*, 111 S. Ct. 1661 (1991)........................................................ 9

*Fair Housing Justice Center, Inc. v. Catholic Managed Long Term Care, Inc., et al.*, 15 Civ.
    8677, ECF Doc. 95 (S.D.N.Y. April 4, 2016)............................................................... passim

*Fair Housing Justice Center, Inc. v. Edgewater Park Owners Cooperative, Inc.*, No. 10-cv-912
    (RPP), 2012 U.S. Dist. LEXIS 32094 (S.D.N.Y. Mar. 8, 2012) .......................................... 5, 17

*Fair Housing Justice Center, Inc. v. Silver Beach Gardens Corp.*, No. 10-cv-912 (RPP), 2010
    U.S. Dist. LEXIS 84886 (S.D.N.Y.  Aug. 13, 2010) ...................................................... 5, 7, 11

*Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002)..................................................... 5

*Forest City Daly Housing, Inc. v. Town of North Hempstead*, 175 F.3d 144 (2d Cir. 1999)....... 18

*Freydel v. New York Hospital*, No. 00-CV-7108, 2000 U.S. App. LEXIS 31862 (2d Cir. Dec. 13,
    2000)........................................................................................................................................ 15

*Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000) ............................................................ 21

*Gillespie v. Dimensions Health Corp.*, 369 F. Supp. 2d 636, 645 (D. Md. 2005)....................... 10

*Greater Los Angeles Council on Deafness v. Zolin*, 812 F.2d 1103 (9th Cir. 1987)................... 11

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ................................................. 4, 6, 11, 16

*Housing Rights Center v. Donald Sterling Corp.*, 274 F. Supp. 2d 1129 (C.D. Cal. 2003) ......... 19

*Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096 (3rd Cir.1996) ............................................ 19

*Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333 (1977) ......................................... 6

*Innovative Health Systems v. City of White Plains,* 117 F.3d 37 (2d Cir. 1997) ......................... 11

*Keith Short & Fair Housing Justice Center v. Manhattan Apts., Inc.*, 916 F. Supp. 2d 375
   (S.D.N.Y. 2012) ........................................................................................................... 9

*L.C. v. Lefrak Organization, Inc.*, 987 F. Supp. 2d 391 (S.D.N.Y. 2013) ................................... 5, 7

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009) ................................ 12, 15, 20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................................. 7

*Majocha v. Turner*, 166 F. Supp. 2d 316 (W.D. Pa. 2001) .......................................................... 10

*Mental Disability Law Clinic v. Hogan*, 519 Fed. Appx. 714 (2d Cir. 2013) (summary order) .... 8

*Mihalik v. Credit Agricole Cheuvreux*, 715 F.3d 102 (2d Cir. 2013) ......................................... 20

*Montano v. Bonnie Brae Convalescent Hosp., Inc.*, 79 F. Supp. 3rd 1120 (C.D. Cal 2015)........ 14

*New York Civ. Liberties Union v. New York City Transit Auth.*, 684 F.3d 286 (2d Cir. 2011) ........ 6

*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011) ................................................................... 4, 7, 8, 9

*Noll v. International Business Machines Corp.*, 2015 U.S. App. LEXIS 8375 (2d Cir. May 21,
   2015)........................................................................................................................... 13

*Pearson v. Tanner*, 513 Fed. Appx. 152 (3d Cir. 2013) ................................................................ 3

*Pierce v. District of Columbia*, No. 13 Civ. 0134 (KBJ), 2015 WL 5330369 (D.D.C. Sept. 11,
   2015)........................................................................................................................... 14

*Posner v. Adventist Healthcare, Inc.*, No. 08-cv-3306(JKS), 2010 U.S. Dist. LEXIS 63144 (D.
   Md. June 25, 2010)....................................................................................................... 15

*Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898 (2d Cir. 1993) ................................ 4, 7, 11

*Red Bull Associates v. Best Western Intern., Inc.*, 862 F. 2d 963 (2d Cir. 1988) .......................... 8

*Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35 (2d Cir. 2002)........ 11, 18

*Rehab. Support Servs. v. City of Albany*, No. 14-CV-0499 (LEK/RFT), 2015 U.S. Dist. LEXIS
   86081 (N.D.N.Y July 2, 2015) ..................................................................................... 16

*Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249 (E.D.N.Y. 2009) ............................................... 18

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)......................................................................... 9

*State of Conn. Dep't of Env. Protection v. OSHA*, 138 F. Supp. 2d 285 (D. Conn. 2001)........... 10

*Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972) .................................................. 17

*Tsombanidis v. West Haven Fire Dept.*, 352 F.3d 565 (2d Cir. 2003) ........................................ 18

*U.S. v. Lorantffy Care Center*, 999 F. Supp. 1037 (N.D. Ohio 1998) ........................................ 19

*United States v. Carson*, 52 F.3d 1173 (2d Cir. 1995)................................................................. 9

*United States v. Gilman*, 341 F.Supp. 891 (S.D.N.Y. 1972) ...................................................... 17

*United States v. Space Hunters, Inc.*, 429 F.3d 416 (2d Cir. 2005).......................................... 19

*Valley Hous. LP v. City of Derby*, 802 F. Supp. 2d 359 (D. Conn. 2011) ................................... 11

*Walker v. Carnival Cruise Lines*, 107 F. Supp. 2d 1135 (N.D. Cal. 2000) ................................... 8

*Wentworth v. Hedson*, 493 F. Supp. 2d 559 (E.D.N.Y. 2007)............................................. 16, 19

**Statutes**

29 U.S.C. § 794(a) ..................................................................................................................... 13

29 U.S.C. § 794a(a)(2)................................................................................................................. 9

42 U.S.C. § 3602(i) ..................................................................................................................... 11

42 U.S.C. § 3604(c) ............................................................................................................... 11, 18

42 U.S.C. § 3604(f)......................................................................................................... 11, 17, 18

N.Y.C. Admin. Code § 8-102(1)................................................................................................. 12

N.Y.C. Admin. Code § 8-107 ..................................................................................................... 19

N.Y.C. Admin. Code § 8-502(a)................................................................................................. 12

N.Y.C. Admin. Code. § 8-130 .................................................................................................... 12

**Rules**

Fed. R. Civ. P. 18...................................................................................................................... 7

PRELIMINARY STATEMENT

Plaintiff, the Fair Housing Justice Center ("FHJC") brought this lawsuit after its testing operation revealed that many nursing homes in the New York City area were unwilling to consider providing accommodations to ensure equal access for deaf individuals. Various Defendants[1] now seek to dismiss the claims against them, which arise out of alleged discrimination by the staff at nursing homes owned and/or operated by those Defendants.

Defendants first argue that FHJC has no standing to bring these claims because the claims are "manufactured" and, therefore, FHJC has suffered no cognizable injury. Characterizing this case as "manufactured" only seeks to disparage it, and adds nothing to the analysis of the pertinent legal issue, which is whether FHJC has sufficiently alleged its organizational standing to bring a claim to redress harm that it has suffered. The analysis that follows demonstrates that FHJC, a corporation and legal person, has standing to sue under Article III of the Constitution and as a "person aggrieved" under the Rehabilitation Act of 1973 ("RA"), the federal Fair Housing Act ("FHA"), and the New York City Human Rights Law ("NYCHRL").

Defendants further argue that FHJC has failed to state a claim under these laws because Defendants' conduct was not directed at any actual deaf individuals. In doing so, Defendants

---

[1] Allure Rehabilitation Services, LLC; and Hamilton Park Multicare, LLC (together the "Allure group"); Cassena Care, LLC; Amsterdam Nursing Home Corporation; and Sea Crest Health Care Center, LLC (together the "Cassena Care group"); Centers for Specialty Care Group, LLC; Sentosacare LLC; White Plains Center for Nursing Care LLC; Eastchester Rehabilitation and Health Care Center; and Golden Gate Rehabilitation and Health Care Center (together the "Sentosacare group").

The following Defendants are NOT moving to dismiss: Senior Med, LLC; Crown Nursing Home Associates Inc.; Cliffside Nursing Home, Inc.; Forest View Nursing Home, Inc.; Ultimate Care Assisted Living Management LLC; Engel Burman Senior Housing at White Plains LLC d/b/a The Bristal at White Plains; Engel Burman Senior Housing at North Woodmere LLC d/b/a The Bristal at North Woodmere; Engel Burman At Sayville LLC d/b/a The Bristal at Sayville; Engel Burman at Armonk, LLC d/b/a The Bristal at Armonk.

introduce the "fictional deaf person" character to play the part of both red herring and straw man, in an attempt to distract attention away from Defendants' very real discriminatory conduct. The antidiscrimination laws permit enforcement by organizations, through testing, to correct such conduct. FHJC's allegations in this lawsuit establish that Defendants did actually violate the law through their discriminatory refusal to consider providing reasonably requested accommodations to ensure equal access for deaf individuals.

BACKGROUND

FHJC is a non-profit organization dedicated to ensuring that all people have equal access to housing opportunities in the greater New York City region by eliminating housing discrimination and creating open, accessible, and inclusive communities. Complaint, ECF #1, ¶ 9.[2] To this end, FHJC provides various services free of charge and without regard to income, including testing and other investigations of allegations of housing discrimination. *Id.* ¶ 10. FHJC conducts these testing investigations by employing "Testers," who are individuals who pose as prospective renters, home buyers, residents, and the like for the purpose of obtaining information about the conduct of local governments, landlords, real estate agents, companies, and others to determine if housing discrimination is taking place. *Id.* ¶¶ 11–12. FHJC initiated such a testing operation against all of the Defendants in this lawsuit, and against other entities not named in this lawsuit, in response to concerns brought to its attention by the deaf community about nursing homes being unwilling to consider providing necessary accommodations to deaf individuals. *See id.* ¶ 1. FHJC then brought this lawsuit against those entities that displayed apparent discriminatory

---

[2] This is the core of FHJC's mission. *See* http://www.fairhousingjustice.org/about-us/mission-history/ (last accessed June 30, 2016).

animus or made discriminatory comments against deaf individuals during the testing operation. *See id.*

The allegations in the Complaint (ECF #1) describing FHJC's testing operation generally are as follows:

> 36. FHJC's testing investigation against the Defendants involved Testers making telephone or videophone calls to Defendants, and/or visiting Defendants' facilities in person. The Testers, operating under aliases, made inquiries purportedly on behalf of fictional deaf relative(s). The Testers gathered preliminary information about Defendants' services and inquired specifically about the availability of auxiliary aids and services, including onsite ASL interpreters, for their deaf relative(s).

> 37. Audio and/or video recordings were made of all contacts between the Testers and agents of the Defendants.

FHJC then makes factual allegations pertaining specifically to the moving Defendants, which FHJC summarizes as follows:

- FHJC alleges three tests against facilities that are part of the Allure group (*see id.* ¶ 15). In two of these tests, the facility representative unambiguously represented that no ASL interpreter was available at the facility, and/or that the facility would not provide one. *Id.* ¶¶ 40, 44. In the third test, the contact at the facility hung up on the deaf tester after he tried (twice) to obtain information about the availability of an interpreter. *Id.* ¶ 42.

- FHJC alleges five tests against facilities that are part of the Cassena Care group (*see id.* ¶ 17). In all five of these tests, the facility representative unambiguously represented that no ASL interpreter was available at the facility, and/or that the facility would not provide one. *Id.* ¶¶ 49, 51, 53, 55, 58.

- FHJC alleges three tests against facilities that are part of the Centers for Specialty Care group (*see id.* ¶ 20). In all three of these tests, the facility representative unambiguously

represented that no ASL interpreter was available at the facility, and/or that the facility would not provide one. *Id.* ¶¶ 60, 62, 64.

- FHJC alleges six tests against facilities that are part of the Sentosacare group (*see id.* ¶ 23). In all six of these tests, the facility representative unambiguously represented that no ASL interpreter was available at the facility, and that the facility would not provide one. *Id.* ¶¶ 70, 72, 74, 76, 80, 82.

The Defendants attempt to trivialize these allegations, often by attaching the customary labels of "conclusory" and/or "implausible" to them. However, for each group of facilities, FHJC uncovered multiple instances of discriminatory conduct consisting of outright refusals to provide a certain service, even when the need for that service was made apparent. Based upon this repeated corroboration of its tests, FHJC included the moving Defendants in this lawsuit, alleging that they "thus discriminate against elderly deaf residents and prospective residents by failing and/or refusing to provide qualified American Sign Language interpreters or other auxiliary aids and services to ensure effective communication." Complaint, ECF #1, ¶ 6. When taken as true and read as a whole—as it must be[3]—the Complaint sufficiently alleges both FHJC's standing to bring this suit and Defendants' violation of the civil rights laws cited therein.

<u>ARGUMENT</u>

**A. Plaintiff Has Organizational Standing Under Article III of the U.S.**

    **Constitution**

---

[3] "Courts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable. We do draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner." *Pearson v. Tanner*, 513 Fed. Appx. 152, 154 (3d Cir. 2013) (formatting and citation omitted).

In *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), the United States Supreme Court explained that when determining whether an organization has Article III standing to sue, "we conduct the same inquiry as in the case of an individual: Has the plaintiff alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction?" *Id.* at 378–79 (formatting omitted). If yes, then the organization may sue. *Id.* In their motions, Defendants cite to *Havens* and, curiously, a number of Second Circuit decisions that *extended* standing to organizations under very similar circumstances. *E.g.*, *Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011); *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898 (2d Cir. 1993). FHJC wholeheartedly agrees that these cases establish that an organization can establishing a "concrete and demonstrable injury" by alleging that a defendant's actions "perceptibly impaired" the organization's ability to provide services. *See Havens*, 455 U.S. at 378–79.

Indeed, courts have consistently granted FHJC standing when it brings discrimination cases following a testing operation, as the testing operation establishes the necessary diversion of resources and frustration of mission to fulfill the requisite perceptible impairment. Just a few months ago, District Judge Paul A. Engelmayer of the Southern District of New York ruled in FHJC's favor in this action's companion case. *See Fair Housing Justice Center, Inc. v. Catholic Managed Long Term Care, Inc., et al.*, 15 Civ. 8677, ECF Doc. 95, Transcript pp. 10–33 (S.D.N.Y. April 4, 2016) (hereinafter *FHJC v. Archcare, et al.*) (a true and correct copy of which is appended hereto as Exhibit A). That case arises from the same FHJC testing operation against nursing homes in the New York City area, and contains the same claims of disability discrimination against deaf individuals. One defendant in that case moved to dismiss on the exact same grounds that the Defendants in the instant case propose. Judge Engelmayer denied that motion from the bench,

5

holding that FHJC had sufficiently alleged both its standing and its entitlement to relief. *See generally id.*

FHJC is unable to find a case in which it was denied standing in a suit brought following a testing operation, and Defendants have not supplied one either. *See, e.g.*, *L.C. v. Lefrak Organization, Inc.*, 987 F. Supp. 2d 391, 397 (S.D.N.Y. 2013) ("FHJC has alleged that it 'expended staff time and other resources to investigate and respond to Defendants' discriminatory rental practices, which diverted resources away from other FHJC activities.' This allegation is sufficient to plead injury-in-fact and thus organizational standing. Accordingly, it appears at this juncture that FHJC has Article III standing to bring this action."); *Fair Housing Justice Center, Inc. v. Silver Beach Gardens Corp.*, No. 10-cv-912 (RPP), 2010 U.S. Dist. LEXIS 84886, at *20 (S.D.N.Y. Aug. 13, 2010) ("Plaintiff alleges that it 'has suffered injury in the form of a diversion of its resources and frustration of its mission, including staff time expended to respond to Defendants' discriminatory conduct.' . . . The diversion of Plaintiff's resources and frustration of Plaintiff's mission is the type of injury held to be sufficient by the Supreme Court and the Second Circuit to demonstrate the injury in fact element of organizational standing."); *see also Fair Housing Justice Center, Inc. v. Edgewater Park Owners Cooperative, Inc.*, No. 10-cv-912 (RPP), 2012 U.S. Dist. LEXIS 32094, at *13 (S.D.N.Y. Mar. 8, 2012) (denying summary judgment) ("Plaintiff's use of testers expended staff time and resources that could have been used to identify and investigate other potential instances of housing discrimination in the New York metropolitan area."); *Fair Housing of Marin v. Combs*, 285 F.3d 899, 903–05 (9th Cir. 2002).

To be very clear, as in the cases cited above, FHJC brings suit here under a theory of *organizational* standing, not one of *associational* (or representational) standing. The former involves a lawsuit brought by an organization to seek redress for harm to *itself*, while the latter

6

involves a lawsuit brought by an organization to enforce the rights of its members or constituents. *C.f. Havens 455* U.S. at 378–79 (organizational standing), *with Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) (associational standing). The Second Circuit Court of Appeals has explained:

> An organization can have standing to sue in one of two ways. It may sue on behalf of its members, in which case it must show, inter alia, that some particular member of the organization would have had standing to bring the suit individually. . . . In addition, an organization can have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy. . . . Under this theory of "organizational" standing, the organization is just another person—albeit a legal person—seeking to vindicate a right. To qualify, the organization itself must meet the same standing test that applies to individuals. . . .

*New York Civ. Liberties Union v. New York City Transit Auth.*, 684 F.3d 286, 294–95 (2d Cir. 2011); *see also Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 171 n.7 & 192 n.9 (S.D.N.Y. 2006). Therefore, organizational standing, as opposed to associational standing, does not require that there be any natural persons who would otherwise have standing to sue in their own right. Accordingly, that FHJC does not sue on behalf of any deaf or disabled individuals is irrelevant to the issue of FHJC's Article III, organizational standing to sue.

The pertinent allegations pertaining to FHJC's injury-in-fact, and therefore its standing in the instant case, are contained in paragraphs 13 and 14 of the Complaint (ECF #1), in which FHJC alleges:

> 13. FHJC expended staff time and other resources to investigate and respond to Defendants' discriminatory practices, which diverted resources away from other FHJC activities.

> 14. Defendants' discriminatory rental practices frustrated FHJC's mission to ensure that all people have equal access to housing opportunities in New York by, among other things, making facilities inaccessible by reason of disability.

Defendants' attempt to attach the customary labels of "conclusory" and/or "implausible" to these allegations is unavailing. No further specificity is required at the pleading stage. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.") (formatting and citation omitted); *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) ("the injury-in-fact element is not Mount Everest. The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege some specific, identifiable trifle of injury.") (formatting and citation omitted). As Judge Engelmayer noted, in the organizational standing context, "[t]he Second Circuit has liberally construed *Havens*' perceptible impairment standard." *FHJC v. Archcare, et al.*, Ex. A, at 16 (citing *Ragin*, 6 F.3d at 950; and *Nnebe*, 644 F.3d at 157)). Moreover, FHJC's allegations in the instant case are nearly identical to those in both *Havens* and in the cases cited above in which FHJC itself established standing, meaning they are once again sufficient to confer standing here. *See Havens*, 455 U.S. at 379; *FHJC v. Archcare, et al.*, Ex. A, at 16–17; *Lefrak*, 987 F. Supp. 2d at 397; *Silver Beach*, 2010 U.S. Dist. LEXIS 84886, at *20.

Defendants nonetheless argue that FHJC lacks standing because its testing operation represented only an expenditure in anticipation of litigation, and not an expenditure directed at counteracting any discrimination of which FHJC was specifically aware at Defendants' facilities. This argument fails. First, the Second Circuit "has explicitly rejected the argument that litigation expenses are insufficient to demonstrate an injury in fact for the purposes of Article III standing." *Mental Disability Law Clinic v. Hogan*, 519 Fed. Appx. 714, 717 (2d Cir. 2013) (summary order) (citing *Nnebe*, 644 F.3d at 157). This conclusion makes ample sense, especially in the context of

8

enforcement of civil rights laws through civil litigation. Plaintiffs who bring suit to enforce civil rights laws do so in the role of "private attorneys general" seeking to vindicate "a policy of the highest priority." *Walker v. Carnival Cruise Lines*, 107 F. Supp. 2d 1135, 1143 (N.D. Cal. 2000) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978)); *see also Red Bull Associates v. Best Western Intern., Inc.*, 862 F. 2d 963, 967 (2d Cir. 1988) (noting "a strong federal public policy favoring enforcement of the civil rights laws so important to the advancement of modern society"). Second, a testing operation of this nature is not inherently an expenditure in anticipation of litigation—it is an expenditure to identify discrimination that is otherwise difficult to detect or address, the response to which might include litigation, but may also include community outreach or other corrective action as the results of the test warrant. *See* Complaint, ECF #1, ¶ 10 (noting that FHJC, far from being a serial litigant, provides a panoply of social services besides bringing lawsuits). Finally, FHJC's testing operation in this case was designed not only to uncover discrimination, but also to corroborate it. FHJC did not stop at the first sign of discrimination and file this lawsuit; rather, once it encountered discrimination by these nursing home groups, it continued testing to verify those findings. This is to say that "[w]hile the initial testing operation may have been unprompted by any report of any illegality at [a particular nursing home], and the expenditures to support it therefore might not have been caused by the nursing home's alleged violations of law," the additional testing operations on each group of facilities were "prompted by the evidence the first visit revealed of the home's unwillingness or alleged unwillingness to accommodate hearing-impaired applicants." *FHJC v. Archcare, et al*, Ex. A, at 18. This diversion of resources "is sufficient to constitute a perceptible opportunity cost that qualifies as an injury in fact." *Id.* (citing *Nnebe*, 644 F.3d at 157). Consequently, FHJC has standing to sue as an organization.

## B.  Plaintiff Has Standing to Seek Injunctive Relief

In order to state a viable claim for injunctive relief, a plaintiff must essentially show that there is some conduct capable of being enjoined, such that an injunction would be a useful and justiciable remedy. Plaintiffs can accomplish this by alleging that the conduct complained of was not an isolated incident in the past: "For a plaintiff to have standing to request injunctive or declaratory relief, the injury alleged must be capable of being redressed through injunctive relief 'at that moment.' . . . The plaintiff may meet this standard by alleging that the defendant was engaging in the unlawful practice against the plaintiff at the time of the complaint." *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993) (citing *County of Riverside v. McLaughlin*, 111 S. Ct. 1661, 1667 (1991)). FHJC has done just this in the Complaint. *See generally* Complaint, ECF #1.

"A pattern of discriminatory conduct is not necessary to warrant the award of injunctive relief; even one instance of discrimination can be sufficient." *Keith Short & Fair Housing Justice Center v. Manhattan Apts., Inc.*, 916 F. Supp. 2d 375, 402 (S.D.N.Y. 2012). Additionally, "when the violation has been founded on systematic wrongdoing rather than an isolated occurrence, a court should be more willing to enjoin future misconduct." *United States v. Carson*, 52 F.3d 1173, 1184 (2d Cir. 1995) (internal quotation marks omitted). This standard is entirely consistent with *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983), which holds that to have standing to pursue the forward-looking remedy of injunctive relief, a plaintiff must show a "sufficient likelihood" of future injury. *See id*. This is not a particularly high bar, such as would exist if FHJC were seeking a preliminary injunction.[4] Accordingly, a plaintiff does not have to show at the pleading stage that

---

[4] *E.g. State of Conn. Dep't of Env. Protection v. OSHA*, 138 F. Supp. 2d 285, 291 (D. Conn. 2001) (discussing the higher standard for a preliminary injunction).

there is a *certainty* of ongoing or future injury, or even that such injury is more likely than not; what *Lyons* requires is a showing of a "*sufficient* likelihood." *Id.*

FHJC makes the requisite showing of sufficient likelihood here: Defendants are alleged to have engaged in continuing discriminatory conduct, based both on multiple observations of such conduct and on Defendants' expressed intent to persist in such conduct; it is FHJC's mission to eliminate such discriminatory conduct and it has diverted resources to do so; and unless Defendants are ordered to cease the conduct, there is a reasonable, non-speculative chance that the conduct will persist and continue to frustrate FHJC's mission. This is enough at the pleading stage to preserve a claim for injunctive relief in this jurisdiction. As Judge Engelmayer noted, "[c]ourts faced with claims of such a 'steadfast refusal' to accommodate deaf persons have found standing to pursue injunctive relief." *FHJC v. Archcare, et al.*, Ex. A, at 20 (citing *Majocha v. Turner*, 166 F. Supp. 2d 316, 325 (W.D. Pa. 2001); *Gillespie v. Dimensions Health Corp.*, 369 F. Supp. 2d 636, 645 (D. Md. 2005)).  Thus, it would not be speculative for the Court to conclude, at this stage, that there is a sufficient likelihood that the alleged discrimination may continue unless remedied through injunctive relief. *See id.* at 20–21 ("Based on the pleadings, the Court finds a sufficient likelihood that FHJC will continue to divert resources to investigate and respond to ArchCare's allegedly unlawful practices if they are not redressed. FHJC has therefore shown a threat of future injury and has standing to pursue declaratory and injunctive relief.").

Also, it does not matter that FHJC is an organization that employed testers, as opposed to a deaf individual who would actually seek housing or otherwise to use Defendants' services. *See Silver Beach Gardens*, 2010 U.S. Dist. LEXIS 84886, at *19 ("The courts granted injunctive relief and damages for the organizational claimants in [*Havens*, 455 U.S. 363; *Ragin*, 6 F.3d 898; and *Cabrera v. Jakabovitz*, 24 F.3d 372, 379 (2d Cir. 1994)], despite the fact that the plaintiffs never

11

applied for housing."). FHJC has standing in its own right to obtain an injunction to prevent discrimination in housing—a matter that, far from being an abstract social interest, is central to FHJC's existence. *See* Complaint, ECF #1, ¶¶9–14 (describing FHJC's mission). The Court should decline Defendants' offer to summarily dismiss FHJC's claim for injunctive relief.

### C.  Plaintiff Has Stated Claims Under the RA, FHA, and NYCHRL

#### 1. The Rehabilitation Act

The Rehabilitation Act extends relief "to any person aggrieved by any act or failure to act" thereunder. 29 U.S.C. § 794a(a)(2). There is nothing in the language of the Rehabilitation Act that requires a plaintiff asserting a claim thereunder to be disabled; to this end, courts consistently recognize organizational standing in Rehabilitation Act cases. *Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 46 n.2 (2d Cir. 2002) (in a case brought under the RA and FHA, finding that the organizational plaintiff "has standing both as an individual plaintiff and under organizational standing theory"); *Valley Hous. LP v. City of Derby*, 802 F. Supp. 2d 359, 384 (D. Conn. 2011) (same); *Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399, 405–06 (3d Cir. 2005) (an RA case in which the court observed that "'[a]ny person' may include individuals as well as entities"); *Greater Los Angeles Council on Deafness v. Zolin*, 812 F.2d 1103, 1115 (9th Cir. 1987) (granting standing under the RA where an organization expended resources "for the benefit of hearing-impaired persons"); *see also Innovative Health Systems v. City of White Plains*, 117 F.3d 37, 47 (2d Cir. 1997).

Defendants cite *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) to support their argument that FHJC cannot state a claim under the Rehabilitation Act because FHJC is not an "otherwise qualified" individual with a disability. This argument seems improperly to

muddle organizational standing with associational standing, as discussed earlier. The proper question is whether FHJC has standing to bring these claims as an organization, not whether there is an existing deaf person who would also have standing to bring these claims. As in other cases in which FHJC established standing to sue, it must establish its own standing separate and apart from the standing of any hypothetical plaintiff, and it has done so by alleging the requisite diversion of resources and frustration of mission.

In addition to the claims of a deaf individual, *Loeffler* also involved the claims of two hearing (i.e., non-deaf) individuals. *See id.* at 277. A panel of the Second Circuit Court of Appeals concluded that the hearing individuals were "persons aggrieved" within the meaning of the Rehabilitation Act and therefore had standing under the statute, even though they themselves were not individuals with disabilities. *Id.* at 279. In *Loeffler*, the children's claims happened to be tied to their association with disabled individuals; however, standing under the RA is not limited to situations in which an association exists, and an organization that expends resources to protect the rights of disabled individuals can be a "person aggrieved" within the meaning of the Rehabilitation Act as well, pursuant to the cases cited above. FHJC has standing as an organization because it diverted resources to test violations of the RA. In uncovering such discrimination, FHJC has suffered its own independent, cognizable injury (diversion of resources and frustration of mission), and is therefore a "person aggrieved" within the meaning of the Rehabilitation Act.

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Defendants argue that FHJC's claim under the RA will necessarily fail due to the absence of a deaf individual with respect to

whom the reasonableness of an interpreter as an accommodation can be determined. This argument, while ostensibly appealing, fails because it mischaracterizes FHJC's claim. FHJC "is not suing [these Defendants] for [their] failure to accommodate any one particular disabled person on a particular instance. Rather, its discrimination claim is based on [Defendants'] admitted policy and practice, at least based on the complaint, of never accommodating any deaf person who requires an interpreter." *FHJC v. Archcare, et al.*, Ex. A, at 25.

There is a crucial distinction between *refusing* to provide an accommodation in a manner that displays a discriminatory attitude, as opposed to *declining* to provide an accommodation after considering whether it would be appropriate. Defendants argue that deaf individuals are not entitled to an accommodation of their choice, and FHJC agrees,[5] although this argument completely misses the mark. Although the RA "does not necessarily require covered entities to provide ASL interpreters to deaf individuals in every instance, it does require that such entities at least be willing to do so when necessary to facilitate effective communication. Accordingly, courts have held that a defendant must engage in a 'interactive process' with a disabled person to assess the reasonableness of the requested accommodation." *FHJC v. Archcare, et al.*, Ex. A, at 25–26 (citing *Montano v. Bonnie Brae Convalescent Hosp., Inc.*, 79 F. Supp. 3rd 1120, 1127 (C.D. Cal 2015); and *Pierce v. District of Columbia*, No. 13 Civ. 0134 (KBJ), 2015 WL 5330369, at *14, (D.D.C. Sept. 11, 2015)); *see also American Council of the Blind v. Paulson*, 525 F.3d 1256, 1260 (D.C. Cir. 2008) (noting that the United States Supreme Court "has acknowledged that where a

---

[5] FHJC agrees that a disabled individual is not entitled to demand an unreasonable accommodation. However, an American Sign Language interpreter has been recognized as a "common form of reasonable accommodation" for deaf individuals. *Noll v. International Business Machines Corp.*, 2015 U.S. App. LEXIS 8375, at *13–15 (2d Cir. May 21, 2015) (analysis under Title I of the ADA and its implementing regulations). Far from being an outrageous demand, an interpreter is a natural accommodation for a deaf person to request, particularly for services that involve complex communications. *See* Complaint, ECF #1, ¶¶ 2–4.

[covered] entity refuses to accommodate otherwise qualified disabled individuals, its refusal may be unreasonable and discriminatory") (*citing Alexander v. Choate*, 469 U.S. 287, 300 (1985)). Thus, while the propriety of offering a particular auxiliary aid or service depends on a case-by-case analysis, the law requires that the covered entity be at least *willing* to undertake such an analysis; otherwise, the entity eschews the logically antecedent obligation to assess the accommodation needs of an individual in order to determine what accommodations would, in fact, be appropriate. *See id.* (a statement reflecting a policy "amounting to no ASL interpreter services under any circumstances, necessarily reflects a flouting of this obligation").

Here, the Complaint alleges that FHJC's testers inquired about the availability of ASL interpreters for deaf relatives who would need ASL interpreters in order to communicate. The testers did so multiple times within each nursing home group. Defendants' agents uniformly stated that Defendants would *not* provide an ASL interpreter, and expressed no flexibility on the subject. Defendants' agents did not say that they would provide an interpreter only if necessary; or that they would consider providing one in addition to, or instead of, other auxiliary aids and services. They simply said "no," and in doing so, communicated that deaf individuals are unwelcome at Defendants' facilities. "In the face of such a categorical refusal to accommodate the entire universe of hearing-impaired persons, it is not necessary to pursue a failure-to-accommodate claim under the RA that there be a specific deaf plaintiff whose rights have been violated." *FHJC v. Archcare, et al.*, Ex. A, at 26 (citing *Brooklyn Center for the Disabled v. Bloomberg*, 980 F. Supp. 2d 588, 617–18 (S.D.N.Y. 2013) for the proposition that "the defendants' systematic failure to address the needs of the general categories of disabled persons was sufficient to establish liability" under the RA).

Finally, FHJC is entitled to money damages under the RA, principally because the Defendants' alleged discriminatory conduct and statements, amounting to a "categorical refusal," support a finding of intentional discrimination. *Loeffler*, 582 F.3d at 275.[6] FHJC's allegations also support a finding of deliberate indifference. *Loeffler* holds that

> in the context of the Rehabilitation Act, intentional discrimination against the disabled does not require personal animosity or ill will.[7] Rather, intentional discrimination may be inferred when a policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy or custom."

*Id*. As further explained by then-District Judge Sotomayor:

> [W]hat the clear policy of Congress mandates[] is that the question of intent in accommodations cases does not require that plaintiff show that defendants harbored an animus towards [disabled individuals]. Rather, intentional discrimination is shown by an intentional, or willful, violation of the Act itself. With this understood, it becomes clear, that while defendants may have had the best of intentions, and while they may have believed themselves to be within the confines of the law, they nevertheless intentionally violated the ADA and the Rehabilitation Act by willfully withholding from plaintiff the reasonable accommodations to which she was entitled under the law. They had notice of the potential risk of their decision, and clearly refused the accommodation knowingly.

*Bartlett v. New York State Bd. of Law Examiners*, 970 F. Supp. 1094, 1151 (S.D.N.Y. 1997)

(Sotomayor, J.). Here, FHJC alleges that Defendants "consciously enforce[] a policy of never

---

[6] *Loeffler* is controlling on this matter. Defendants' reliance on *Freydel v. New York Hospital*, No. 00-CV-7108, 2000 U.S. App. LEXIS 31862 (2d Cir. Dec. 13, 2000) and *Constance v. SUNY Health Science Ctr. at Syracuse*, 166 F. Supp. 2d 663 (N.D.N.Y. 2001) is misplaced: "*Freydel*, of course, is unreported, but more importantly, both *Freydel* and *Constance* have been supplanted by the Second Circuit's holding in *Loeffler* that unheeded requests for interpreter services which the [covered entity] knows it is required to honor are sufficient to support a finding of intentional discrimination." *Posner v. Adventist Healthcare, Inc.*, No. 08-cv-3306(JKS), 2010 U.S. Dist. LEXIS 63144, at *14 (D. Md. June 25, 2010).

[7] While a showing of personal animosity or ill will is not *required*, FHJC contends that Defendants' conduct demonstrates such animosity or ill will against deaf individuals.

16

providing interpreters to [their] residents, without regard to whether alternative auxiliary aids would be adequate." *FHJC v. Archcare, et al*., Ex. A, at 29; *e.g.* Complaint, ECF #1, ¶ 107. "Such a policy, if one exists, unquestionably would evince, at the very least, deliberate indifference to the rights of deaf persons who require interpreters for effective communication." *Id.* Thus, FHJC has established an entitlement to compensatory damages under the Rehabilitation Act.

### 2. The Fair Housing Act

The FHA, like the Rehabilitation Act, extends relief to any "aggrieved person," which is defined as any person, including a corporation, who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i); *see also Cales v. New Castle Hill Realty*, No. 10-cv-3426 (DAB), 2011 U.S. Dist. LEXIS 9619, at *15 (S.D.N.Y. Jan. 31, 2011) (another case brought by FHJC under the FHA). Pursuant to this provision, FHJC has standing to sue under the FHA so long as it has standing to sue under Article III of the Constitution. *Rehab. Support Servs. v. City of Albany*, No. 14-CV-0499 (LEK/RFT), 2015 U.S. Dist. LEXIS 86081, at *10-11 (N.D.N.Y July 2, 2015); *see also Havens*, 455 U.S. at 378–79.

FHJC brings claims under the FHA provision banning discriminatory conduct, 42 U.S.C. § 3604(f), as well as the provision prohibiting discriminatory statements, 42 U.S.C. § 3604(c). The cases cited above conclusively establish FHJC's standing to sue under the former provision. As to the latter provision, contrary to Defendants' arguments, "a plaintiff need not be a member of a protected class in order to bring suit under this section of the Fair Housing Act." *Wentworth v. Hedson*, 493 F. Supp. 2d 559, 566 (E.D.N.Y. 2007) (addressing 42 U.S.C. § 3604(c)). For example, "[i]t has long been held that whites have standing to sue under section 3604(c) for discriminatory statements made against non-whites." *Id.* (citing, *inter alia*, *Trafficante v. Metropolitan Life Ins.*

*Co.*, 409 U.S. 205, 208–12 (1972); *United States v. Gilman*, 341 F. Supp. 891, 896–97 (S.D.N.Y. 1972)). Analogously, FHJC has standing as an organization for statements made to it that are allegedly discriminatory against deaf individuals. Thus, as with the Rehabilitation Act, FHJC has standing to sue under the FHA as an "aggrieved person" because it diverted resources to investigate Defendants' allegedly discriminatory conduct. Moreover, organizations can properly allege violations of the FHA, even when the defendant has not actually applied the challenged decision or policy to a protected individual, so long as that decision or policy discourages protected individuals from seeking the housing of their choice. *Edgewater Park*, 2012 U.S. Dist. LEXIS 32094, at *17 (finding that "one of the discriminatory aspects" of a challenged policy "is that it discourages African-Americans from even applying for shares" at the housing complex, meaning that FHJC could properly bring a claim under the FHA).

The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." 42 U.S.C. § 3604(f)(2). The term "discrimination" in this provision includes "a *refusal* to make reasonable accommodations in rules, policies, practices, or services, when such accommodations *may be* necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B) (emphases added).

As before, Defendants' insistence that the claim fails for lack of a particular deaf individual is unwarranted. FHJC's allegations state a claim under the plain language of the statute: Defendants *refused* to make a reasonable accommodation in their services after being informed that such an accommodation *may be* necessary to afford a person equal opportunity to use and enjoy a dwelling. This conduct is certainly prohibited by 42 U.S.C. § 3604(f)(3)(B). Caselaw confirms that individual plaintiffs proceeding under a failure-to-accommodate theory "must show

18

that, but for the accommodation, they *likely* will be denied an equal opportunity to enjoy the housing of their choice." *Tsombanidis v. West Haven Fire Dept.*, 352 F.3d 565, 578 (2d Cir. 2003) (citation omitted). Thus, there is no requirement under the FHA that the refused accommodation be necessary; all that is required is that it *may be* necessary, such that the failure to provide it will *likely* deny protected individuals an equal opportunity to enjoy housing of their choice. FHJC's allegations fit this standard. *See* Complaint, ECF #1, ¶¶ 1–6.[8] Additionally, "[r]ecognizing the overlap between FHJC Section 3604(f) and RA Section 504, the Second Circuit has applied the same standards to claims brought under each statute . . . . Accordingly, for the same reasons that FHJC has stated a claim under RA Section 504, it  has also stated a claim under FHA Section 3604(f)." *FHJC v. Archcare, et al.*, Ex. A, at 30 (citing *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 53 (2d Cir. 2002); and *Forest City Daly Housing, Inc. v. Town of North Hempstead*, 175 F.3d 144, 150–52 (2d Cir. 1999)).

Additionally, the FHA also makes it unlawful to "make, print, or publish . . . any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap." 42 U.S.C. § 3604(c). Here, Defendants' agents made statements with respect to the rental of a dwelling; i.e., statements with respect to the admission of prospective residents to the various facilities. *See U.S. v. Lorantffy Care Center*, 999 F. Supp. 1037, 1045 (N.D. Ohio 1998) ("Clearly, the Act prohibits

---

[8] Defendants also argue that FHJC must identify the "neutral application of a rule" from which a variance is sought. This is another red herring. Doing this is only required under a disparate impact theory of liability, which FHJC does not propound here. *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 53 (2d Cir. 2002) is a disparate impact case, and is therefore inapposite on this point of law (although it supports Plaintiff's organizational standing argument under the RA, as discussed previously). The same is true of *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 578 (2d Cir. 2003) and *Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 260 (E.D.N.Y. 2009).

discrimination in the sale or rental of a dwelling, including the admission of residents to a nursing home.") (*citing Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096, 1102 (3rd Cir. 1996)). Notably, "Section 3604(c)'s protections are not limited to housing transactions or to prospective tenants." *Wentworth*, 493 F. Supp. 2d at 56. The Second Circuit has emphasized that "nothing in the language of the provision limits its reach to owners or agents or to statements that directly affect the housing transaction." *United States v. Space Hunters, Inc.*, 429 F.3d 416, 424 (2d Cir. 2005); *see also Housing Rights Center v. Donald Sterling Corp.*, 274 F. Supp. 2d 1129, 1142 (C.D. Cal. 2003) ("Certainly a discriminatory statement . . . violates § 3604(c), even if not made at the moment of first sale or rental."). Defendants' assertion that FHJC has not identified statements that indicate a limitation based on handicap is false; those statements are described throughout the Complaint, and FHJC made audio recordings of those statements pursuant to the testing program. Complaint, ECF #1, ¶ 37. Assuming these allegations are true—which the Court must—they contain sufficient factual material to survive a motion to dismiss.

### 3. The New York City Human Rights Law

The NYCHRL extends standing and relief to "any person claiming to be aggrieved by an unlawful discriminatory practice" in violation thereof. N.Y.C. Admin. Code § 8-502(a). The NYCHRL defines a "person" as "one or more natural persons, proprietorships, partnerships, associations, group associations, organizations, governmental bodies or agencies, *corporations*, legal representatives, trustees, trustees in bankruptcy, or receivers." N.Y.C. Admin. Code § 8-102(1). "Clearly, then, the [NYCHRL] authorizes claims for disability association discrimination . . . and also permits a variety of entities—and not solely individual plaintiffs—to bring discrimination suits." *Bartman v. Shenker*, 5 Misc. 3d 856, 860 (N.Y. Sup. Ct. 2004). With this in

20

mind, and for substantially the same reasons that FHJC has standing to sue under the nearly identical language of the RA and FHA, it also has standing to sue under the NYCHRL.

The New York City Human Rights Law informs courts that its provisions "shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title have been so construed." N.Y.C. Admin. Code. § 8-130. In light of this guidance, the Second Circuit has held that "[i]nterpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of New York City Human Rights Law, viewing similarly worded provisions of federal and state civil rights laws as a *floor* below which the City's Human Rights law cannot fall." *Loeffler*, 582 F.3d at 278 (emphasis in original). The Second Circuit has further instructed that

> courts must analyze NYCHRL claims separately and independently from any federal and state law claims . . . construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible. . . . Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards.

*Mihalik v. Credit Agricole Cheuvreux*, 715 F.3d 102, 109 (2d Cir. 2013).

As with the federal laws discussed above, the NYCHRL makes it unlawful to discriminate on the basis of disability (N.Y.C. Admin. Code § 8-107(4)); requires reasonable accommodations (N.Y.C. Admin. Code § 8-107(15)(a)); and also outlaws discriminatory statements (N.Y.C. Admin. Code § 8-107(5)(a)(3)). Defendants' argument about the sufficiency of FHJC's claims under the NYCHRL is exactly the same as their arguments addressing federal law, and it fails for the same reason. FHJC is an aggrieved person, bringing a valid claim alleging that Defendants

engaged in discrimination on the basis of disability through conduct and statements to that effect, in violation of the NYCHRL. *See FHJC v. Archcare, et al*., Ex. A, at 33.

### D.  Plaintiff Has Sued the Proper Parties

Defendants' counsel have represented that various parent entities[9] of the nursing home groups are not actually "operators" of the nursing homes, and are therefore not proper parties to this lawsuit. To support this argument, Defendants offer their attorney's declaration, annexing various documents purportedly taken from the New York State Department of Health website. *See* Breitenbach Declaration. As a preliminary matter, the Court should strike Defendants' declaration, as it improperly presents matters outside of the pleadings to support a motion to dismiss. *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000) (a court is strictly forbidden to consider any materials outside of the pleadings when deciding a motion brought pursuant to Fed. R. Civ. P. 12(b) unless the Court converts it to a motion for summary judgment pursuant to Fed. R. Civ. P. 56).

In any event, this is an issue of fact, not law—a conclusion made quite evident by Defendants' need to present matters outside of the pleadings in an attempt to make their argument. Furthermore, Plaintiff has ample reason at this time to believe that these entities exercise considerable control over the activities of the other nursing homes. For example, the relevant

---

[9] Allure Rehabilitation Services LLC ("Allure Group"); Cassena Care LLC; and Centers for Specialty Care Group LLC ("Centers Health Care").

22

websites for The Allure Group,[10] Cassena Care,[11] and Centers for Specialty Care[12] describe integrated assisted living systems with common ownership and/or control over the other facilities. It therefore appears that these entities exert a significant amount of control over the nursing homes, making them proper parties in this case. Accordingly, this issue cannot be resolved on the pleadings, and discovery is necessary to determine the nature of the organizational relationship between the various Defendants and the amount and degree of control they exercise over one another. The Court should therefore decline Defendants' offer to dismiss these three Defendants based on representations of counsel and improper extrinsic evidence.

<u>CONCLUSION</u>

The Court should deny Defendants' motion to dismiss.

---

[10] The Allure Group website, http://www.allurecare.com/#!our-centers/cn44, describes Hamilton Park Nursing and Rehabilitation Center and Bedford Center for Nursing and Rehabilitation as "OUR CENTERS," confirming the allegations in paragraph 15 of the Complaint.

[11] The Cassena Care website, http://cassenacare.com/?page_id=7, describes Shore View Nursing and Rehabilitation Center, Amsterdam Nursing Home Corp., Sea Crest Rehabilitation and Health Care Center, and Sayville Nursing and Rehabilitation Center as being part of "The Network" of "our facilities," and contains a link to Amsterdam Nursing Home, confirming the allegations in paragraph 17 of the Complaint.

[12] The Centers Health Care website, http://centershealthcare.com/locations, lists Boro Park Center for Rehabilitation and Health Care, and Brooklyn Center for Rehabilitation and Residential Health Care, as "Centers Health Care affiliated facilities," confirming the allegations in paragraph 20 of the Complaint.

Respectfully submitted,

EISENBERG & BAUM, LLP

By: _____

Andrew Rozynski, Esq.


By: _____

Philip M. Black, Esq.


24 Union Square East, Fourth Floor
New York, NY 10003
(212) 353-8700
arozynski@eandblaw.com
pblack@eandblaw.com

24