FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ SEP 26 2017 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
FAIR HOUSING JUSTICE CENTER,
INC.,

                         Plaintiff,                     **MEMORANDUM & ORDER**

               - against -                    15 CV 6336 (RJD) (LB)

ALLURE REHABILITATION SERVICES LLC,
ET AL.,

                         Defendants.
---------------------------------------------------------------- x

DEARIE, District Judge

      Plaintiff Fair Housing Justice Center ("Fair Housing"), a non-profit organization, brings this action against owners of various nursing homes and assisted living residences in the New York City area.[1] The complaint alleges that defendants, in violation of federal and state law, have policies in place that discriminated against deaf residents on the basis of disability. Defendants move to dismiss for lack of standing and for failure to state a claim. Defendants' motions are denied in their entirety.

## BACKGROUND

      Fair Housing alleges that defendants discriminate against deaf residents of their facilities by refusing to provide American Sign Language ("ASL") translators upon request. Fair Housing describes itself as a non-profit advocacy organization that seeks to identify and remedy housing discrimination against disabled persons in the New York City area. As part of its work, Fair

---

[1] A number of the facilities and their owners have entered into stipulations of settlement with the plaintiffs. The remaining defendants and moving parties are Allure Rehabilitation Services LLC, Hamilton Park Multicare LLC, Cassena Care LLC, Amsterdam Nursing Home Corporation, Sea Crest Health Care Center, LLC, Centers for Specialty Care Group LLC, Sentosacare, LLC, White Plains Center for Nursing Care LLC, Eastchester Rehabilitation and Health Care Center, LLC, and Golden Gate Rehabilitation and Health Care Center, LLC.

Housing conducts investigations wherein individuals posing as prospective renters, home buyers or residents ("testers") attempt to uncover discriminatory practices. This case arises out of one such investigation. Over a period of months, the testers visited and called defendants' facilities purportedly on behalf of deaf relatives seeking housing. The testers inquired about the availability of ASL interpreters and translators at the facilities. The complaint alleges that each of the named defendants told testers that the facilities did not employ ASL interpreters and would not make any available for deaf residents. Some facilities stated outright that ASL interpreters would not be provided. Others said that because the facilities offered different communication tools, including white boards or picture boards with images of common necessities, ASL interpreters were not necessary.

## DISCUSSION

Fair Housing alleges violations of the Rehabilitation Act ("RA"), the Fair Housing Act ("FHA"), and the New York City Human Rights Law ("NYCHRL") and seeks declaratory and injunctive relief as well as compensatory and punitive damages and costs. Defendants filed three separate motions to dismiss, collectively asserting that Fair Housing does not have standing and, alternatively, that Fair Housing fails to state a claim for relief.

*1. Standing*

Article III standing is an "irreducible constitutional minimum." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). For a plaintiff to establish standing, it must demonstrate "(1) 'injury in fact,' (2) a 'causal connection' between that injury and the complained-of conduct, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" Strubel v. Comenity Bank, 842 F.3d 181, 187-88 (2d Cir. 2016) (quoting Lujan, 504 U.S. at 560-61). A

plaintiff seeking injunctive relief must additionally "establish a likelihood of future or continuing harm." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016).

An organization, such as Fair Housing, may establish standing in one of two ways. "It may sue on behalf of its members, in which case it must show, *inter alia*, that some particular member of the organization would have had standing to bring the suit individually." N.Y. Civil Liberties Union v. N.Y.C. Transit Auth., 684 F.3d 286, 294 (2d Cir. 2012) (emphasis in original). This has been called "representational" standing. See Warth v. Seldin, 422 U.S. 490, 511 (1975). Otherwise, the "organization can 'have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.'" N.Y. Civil Liberties Union, 684 F.3d at 294 (quoting Warth, 422 U.S. at 511). Under this so-called "organizational" standing, "the organization is just another person—albeit a legal person—seeking to vindicate a right." Id.

Fair Housing asserts organizational standing, alleging that it "expended staff time and other resources to investigate and respond to [d]efendants' discriminatory practices, which diverted resources away from other [Fair Housing] activities." Compl. ¶ 13. Fair Housing also provides information to public and other non-profit organizations about fair housing laws, intake counseling for victims of housing discrimination, legal referrals for complainants, and related services. Id. ¶ 10. Defendants argue that the diversion of plaintiff's resources for testing was done solely "in anticipation of litigation" and was therefore an attempt to "manufacture" Article III standing. See Def. Sentosacare LLC, et. al., Mem. at 7, ECF No. 116-1. This argument is not supported by controlling precedent.

In Havens Realty Corporation v. Coleman, 455 U.S. 363 (1982), the Supreme Court held that a civil rights organization deploying a testing operation had organizational standing if it

3

was required to "devote significant resources to identify and counteract the [defendant landlords'] racially discriminatory steering practices." Id. at 379. The Second Circuit reads Havens Realty to mean that "only a 'perceptible impairment' of an organization's activities is necessary for there to be an 'injury in fact.'" Nnebe v. Daus, 644 F.3d 147, 157 (2d Cir. 2011) (quoting Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898, 905 (2d Cir.1993)). This impairment may include costs incurred in anticipation of litigation. See Ragin, 6 F.3d at 905 ("That some of the [organization's] staff's time was spent exclusively on litigating this action does not deprive the organization of standing to sue in federal court."). In Nnebe, the Second Circuit recognized that "some circuits have read Havens Realty differently than [the Second Circuit] read it in Ragin and have emphasized that 'litigation expenses alone do not constitute damage sufficient to support standing.'" Id. at 157 (quoting Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers, 141 F.3d 71, 78–79 (3d Cir.1998)). Nevertheless, the court affirmed that "Ragin remains good law in this Circuit." Id. A recent summary order reaffirmed Nnebe's reasoning, holding that diversion of organizational resources for litigation expenses is sufficient for organizational standing. See Mental Disability Law Clinic, Touro Law Ctr. v. Hogan, 519 F. App'x 714, 717 (2d Cir. 2013) ("This Court has explicitly rejected the argument that litigation expenses are insufficient to demonstrate an injury in fact for the purposes of Article III standing." (citing Nnebe, 644 F.3d at 157)).

Fair Housing alleges that it was required to divert organizational resources to testing, which necessitated multiple visits and calls to defendants' facilities to uncover discriminatory practices. Though testers' visits occurred without any prior complaints of discrimination, Fair Housing incurred ongoing expenditures confirming defendants' policies after initial contacts

4

indicated that ASL interpreters would not be provided. These expenditures establish an injury-in-fact, at least with respect to Fair Housing's request for damages.

Fair Housing has also established standing to pursue its claims for declaratory and injunctive relief. To have standing for injunctive relief, "[t]he plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." City of Los Angeles v. Lyons, 461 U.S. 95, 101–02 (1983) (citations and quotations omitted). This is a "requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." Id. at 111. "[A] district court has broad discretion to enjoin possible future violations of law where past violations have been shown . . . . Courts are free to assume that past misconduct is 'highly suggestive of the likelihood of future violations.'" United States v. Carson, 52 F.3d 1173, 1183–84 (2d Cir. 1995) (quoting SEC v. Mgmt. Dynamics, Inc., 515 F.2d 801, 807 (2d Cir. 1975)). Moreover, "[w]hen the violation has been founded on systematic wrongdoing, rather than an isolated occurrence, a court should be more willing to enjoin future misconduct." Id. at 1184 (quotation omitted).

Defendants argue that any future harm is entirely speculative. But Fair Housing does not allege that defendants engaged in an isolated offense that may or may not be repeated at a future date. Quite the contrary. The complaint alleges in considerable detail that each of the defendants categorically stated that they would not provide ASL interpreters to deaf residents. For example, the complaint alleges that on October 28, 2014, a Fair Housing tester visited Boro Park Center for Rehabilitation and Health Care ("Boro Park"), a facility owned by defendant Centers for Specialty Care Group LLC. Compl. ¶ 59. The tester met with Boro Park's Director of

5

Admissions and was told that they did not offer ASL interpreters and that they use white boards to communicate with deaf residents. Id. The tester asked if Boro Park would be willing to hire an ASL interpreter, and was told no. Id. Another tester called Boro Park in January 2015 and was told by the same Director of Admissions that Boro Park does not offer sign language interpreters. Id. ¶¶ 61-62.

Though the facts of each encounter differ, Fair Housing alleges that each defendant refused to make ASL translators available for deaf residents. If proven, their refusal amounts to an ongoing violation "founded on systematic wrongdoing," Carson, 52 F.3d at 1184, a violation this court may justifiably enjoin.

*2. Failure to State a Claim*

Defendants also move to dismiss for failure to state a claim. To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "'enough facts to state a claim to relief that is plausible on its face.'" Brown v. Daikin Am. Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In reviewing the complaint, this Court "accept[s] all well-pleaded allegations in the complaint as true [and] draw[s] all reasonable inferences in the plaintiff's favor." Chabad Lubavitch of Litchfield Cnty. Inc. v. Litchfield Historic Dist. Comm'n, 768 F.3d 183, 191 (2d Cir. 2014) (second alteration in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Fair Housing's claims under the RA, FHA and NYCHRL will be addressed individually.

6

a. <u>Rehabilitation Act of 1973</u>

Section 504 of the RA states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Under the RA's implementing regulations, a qualifying hospital "shall establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care." 45 C.F.R. § 84.52(c). Additionally, a qualifying hospital is required to "provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question." Id. § 84.52(d)(1).

"To establish a prima facie violation of the RA, a plaintiff must show that [it] is: (1) a 'handicapped person' as defined in the RA; (2) 'otherwise qualified' to participate in the offered activity or to enjoy its benefits; (3) excluded from such participation or enjoyment solely by reason of [its] handicap; and (4) being denied participation in a program that receives federal financial assistance." <u>Loeffler v. Staten Island Univ. Hosp.</u>, 582 F.3d 268, 275 (2d Cir. 2009) (quoting <u>Rothschild v. Grottenthaler</u>, 907 F.2d 286, 289-90 (2d Cir. 1990)). "Generally, a plaintiff can base a discrimination claim under the Rehabilitation Act on 'one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation.'" <u>Kelly v. N.Y. State Office of Mental Health</u>, 200 F. Supp. 3d 378, 390 (E.D.N.Y. 2016) (quoting <u>Davis v. Shah</u>, 821 F.3d 231, 260 (2d Cir.2016)).

A categorical refusal to provide ASL interpreters to deaf residents fails to make a reasonable accommodation and therefore violates the RA. <u>See</u> Transcript of Oral Decision at 26,

Fair Hous. Justice Ctr., Inc. v. Catholic Managed Long Term Care, Inc., No. 15-8677 (S.D.N.Y. Apr. 4, 2016) (hereinafter Catholic Managed)[2]. Fair Housing alleged that defendants refused to make "appropriate auxiliary aids"—ASL interpreters—available under any circumstance when asked by the testers. The RA does not absolutely require covered facilities to provide interpreters upon request, as "the question of whether a proposed accommodation is reasonable is 'fact-specific' and must be evaluated on 'a case-by-case basis.'" Kennedy v. Dresser Rand Co., 193 F.3d 120, 122 (2d Cir. 1999) (citing Wernick v. Federal Reserve Bank, 91 F.3d 379, 385 (2d Cir.1996)). The RA does, however, require the facilities to "at least be willing to [provide ASL interpreters] when necessary to facilitate effective communication." Catholic Managed at 25. This is because the RA requires defendants to undertake an "interactive process with plaintiff to discuss and explore plaintiff's requested accommodations." Montano v. Bonnie Brae Convalescent Hosp., Inc., 79 F. Supp. 3d 1120, 1127 (C.D. Cal. 2015) (citation omitted). An outright refusal to provide an interpreter, as a matter of policy, demonstrates an unwillingness to engage with the needs of deaf persons and therefore violates the RA.

Defendants argue that they could not have violated the RA because there were no actual deaf individuals with whom defendants could have interacted, and it was therefore impossible for defendants to "discuss and explore plaintiff's requested accommodations." Id. But Fair Housing does not allege that defendants violated the rights of any particular individual; it alleges that defendants had a policy and practice of refusing to provide ASL interpreters under any

---

[2] Catholic Managed, a recent case in the Southern District of New York, arose from the same Fair Housing testing operation at issue here. In an opinion read from the bench at oral argument, Judge Paul Engelmayer found that Fair Housing had organizational standing to bring its claims and that it also had sufficiently pled its claims under the RA, FHA and NYCHRL. Judge Engelmayer accordingly denied the defendant facilities' motion to dismiss. The oral argument transcript, including the opinion as read, was attached as Exhibit 1 to Fair Housing's memorandum in opposition. See Pl. Opp. Ex. 1, ECF No. 121-1.

circumstance. Where the facility's policy or practice demonstrates a failure to accommodate, specific occurrences of this failure need not be pled. In Brooklyn Center for the Independence of the Disabled v. Bloomberg, 980 F. Supp. 2d 588 (S.D.N.Y. 2013), Judge Furman found that New York City had violated the RA because the city's sheltering plans failed to ensure effective communication for people with disabilities. Judge Furman noted that the city did not, for example, "provide sign language interpretation at shelters or ensure that common signage is available in Braille." Id. at 650. Even though the city provided "some guidance to shelter staff about communication with people with special needs, the only accommodation it [made] in this regard [was] to provide a communications board with pictures and symbols at shelter registration tables." Id. Because this was insufficient to "ensure that all City residents have access to the service provided by the shelters," the city violated the RA. Id.

So with defendants here. Fair Housing alleges a policy and practice of refusing to provide ASL interpreters to residents. Such an unqualified refusal to even consider providing interpreters would constitute the denial of full access to the facilities and would violate the RA. Id. Taking the complaint as true, Fair Housing has stated a claim under the RA.

In a separate but related argument, defendants assert that Fair Housing does not state a claim under the statutory terms of the RA because it failed to plead that a "qualified individual with a disability" was denied a benefit or was subject to discrimination since all of the prospective residents were fictional. But the RA extends remedies to "any person aggrieved by any act or failure to act," 29 U.S.C. § 794a, and not merely to individuals with a disability. As discussed with regard to standing, Fair Housing alleged that it was independently injured when it was compelled to divert organizational resources to address defendants' practices. It was, in other words, "aggrieved" by defendants' "act or failure to act."

Defendants finally argue that Fair Housing cannot be awarded monetary damages because it has not pled intentional discrimination. See Loeffler, 582 F.3d at 275 ("[M]onetary damages are recoverable only upon a showing of an intentional violation [of the RA]."). In the context of the RA, "intentional discrimination may be inferred when a 'policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the [challenged] policy . . . [or] custom.'" Id. (alterations in original) (quoting Bartlett v. N.Y. State Bd. of Law Examiners, 156 F.3d 321, 331 (2d Cir. 1998), cert. granted, judgment vacated, 527 U.S. 1031 (1999))

In Loeffler, the Second Circuit held that a reasonable jury could find a defendant hospital's repeatedly ignoring a deaf plaintiff's request for an ASL interpreter—going so far as to laugh off the request on one occasion—constituted deliberate indifference to the strong likelihood of a violation. 582 F.3d at 277. Here, defendants were made aware that a prospective deaf resident would require ASL translation at some point but did nothing. Instead, they refused to provide the requested accommodation under any circumstance. Since defendants' refusal indicates that they would never provide ASL interpreters for the testers' relatives, plaintiff adequately pleads that defendants acted with deliberate indifference to the needs of deaf patients.

    b. Fair Housing Act

Fair Housing also brings claims under two subsections of the FHA: 42 USC § 3604(f), banning discrimination in the terms or conditions of a dwelling, and 42 USC § 3604(c), banning discriminatory statements made in connection with the rental or sale of housing. Fair Housing seeks an award of compensatory damages, punitive damages, and costs pursuant to the FHA.

### i. Section 3604(f)(2)

The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling,[3] or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." 42 USC § 3604(f)(2). "Discrimination" in this context includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 USC § 3604(f)(3)(B).

The reasonable accommodation standard under the FHA is co-extensive with the standard under the RA. See Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 334 (2d Cir. 1995) ("[I]n enacting the anti-discrimination provisions of the [FHA], Congress relied on the standard of reasonable accommodation developed under section 504 of the Rehabilitation Act . . . ."); Sinisgallo v. Town of Islip Hous. Auth., 865 F. Supp. 2d 307, 337 (E.D.N.Y. 2012) ("The relevant portions of the FHA, ADA, and Section 504 [of the Rehabilitation Act] offer the same guarantee that a covered entity, such as a [public housing authority], must provide reasonable accommodations in order to make the entity's benefits and programs accessible to people with disabilities. Consequently, analysis of a reasonable accommodation claim under the three statutes is treated the same." (alterations in original) (quotations and citations omitted)). Accordingly, for the same reasons Fair Housing stated a claim under the RA, it has stated a claim under Section 3604(f)(2) of the FHA.

---

[3] Defendant Hamilton Park disputes that a nursing home should be considered a "dwelling" under the FHA, but numerous courts have held otherwise. See, e.g., Hovsons, Inc. v. Twp. of Brick, 89 F.3d 1096, 1102 (3d Cir. 1996) ("We therefore hold that the proposed nursing home is a 'dwelling' within the meaning of § 3602(b).").

11

### ii. Section 3604(c)

Fair Housing has also stated a claim under Section 3604(c) of the FHA, which makes it unlawful to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap . . . or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604. The relevant regulations interpret this provision to cover "all written or oral notices or statements by a person engaged in the sale or rental of a dwelling." 24 C.F.R. § 100.75.

The Second Circuit has read this section of the FHA broadly. Section 3604(c) does not merely "prevent expressions that result in the denial of housing." United States v. Space Hunters, Inc., 429 F.3d 416, 424 (2d Cir. 2005). Rather, "[t]he statute also protect[s] against [the] psychic injury caused by discriminatory statements made in connection with the housing market." Id. (citation omitted). Fair Housing alleges that defendants refused to even consider providing ASL interpreters for the testers' relatives. These refusals were discriminatory statements, and because they were made in connection with the housing market, this claim has been adequately pleaded.

### c. New York City Human Rights Law

Fair Housing's final claim is brought under various provisions of the NYCHRL. Section 8-107(15)(a) requires a place of public accommodation to make a reasonable accommodation for persons with disabilities. N.Y.C. Admin. Code § 8-107(15)(a). Section 8-107(4)(a) provides that it shall be unlawful for a provider of public accommodation, because of the actual or perceived disability of any person, to refuse or deny to such person any of the accommodations, advantages, facilities or privileges thereof. N.Y.C. Admin. Code § 8-107(4)(a). Section 8-107(5)(a)(2) provides that it shall be an unlawful, discriminatory practice for any person having

the right to sell, rent or lease or approve the sale, rental or lease of a housing accommodation, to discriminate against any person because of such person's actual or perceived disability. N.Y.C. Admin. Code § 8-107(5)(a)(2).

NYCHRL also explicitly allows "associational discrimination" claims, whereby claims can be brought on behalf of disabled persons with whom the plaintiff has a "known relationship or association." N.Y.C. Admin. Code § 8-107(20).

The NYCHRL is not co-extensive with federal anti-discrimination laws. Rather an "independent analysis [of NYCHRL] must be targeted to understanding and fulfilling what the statute characterizes as the [NYCHRL]'s 'uniquely broad and remedial' purposes, which go beyond those of counterpart state or federal civil rights laws." Loeffler, 582 F.3d at 278 (quoting Williams v. N.Y.C. Hous. Auth., 61 A.D.3d 62, 66-69 (N.Y. App. Div. 2009)). Thus, claims that might not satisfy the pleading requirements of the federal statutes might still pass muster under the more lenient pleading standard of the NYCHRL.

The provisions of the NYCHRL cited by plaintiffs are substantially similar to corresponding sections of the RA and FHA. See Jing Zhang v. Jenzabar, Inc., No. 12-CV-2988 (RRM) (RER) 2015 WL 1475793 at *13 n.25 (EDNY Mar. 30, 2015). Because the NYCHRL claim is premised on the same factual allegations as the adequately pleaded RA and FHA claims, the NYCHRL claim also withstands the motions to dismiss.

*3. Parties to the Action*

Finally, defendants argue that Allure Rehabilitation Services LLC, Cassena Care LLC, and Centers for Specialty Care Group LLC are not actually owners and/or operators of the nursing home facilities as alleged in the complaint. At oral argument, Fair Housing requested that they be given the opportunity to confer with defendants to identify the correct parties to the

suit and to amend the complaint accordingly. The Court anticipates the parties' resolution of these concerns.

## CONCLUSION

For the reasons stated above, defendant's motions to dismiss are denied in their entirety. The parties will confer and the plaintiff shall, within 14 days, file an amended complaint or stipulation identifying the correct parties.

SO ORDERED.

Dated: Brooklyn, New York
      September 26, 2017

                                                s/ RJD
                                         RAYMOND J. DEARIE
                                         United States District Judge